# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GABRIEL RODRIGUEZ-PACHECO, <br><br> Defendant. | CRIMINAL NO. 15-222 (JAG) |

## MEMORANDUM AND ORDER

GARCIA GREGORY, D.J.

This matter is before this Court pursuant to the Order issued by the United States Court of Appeals for the First Circuit remanding the case "to make factual findings and determine whether consent to the entry was given." Docket No. 186. Upon review of the record and the relevant case law, the Court finds that Defendant Gabriel Rodriguez-Pacheco ("Defendant") provided consent to the warrantless entry.

As relevant here, a warrantless entry into a home is presumptively unreasonable unless the government can establish valid and voluntary consent. *Pagan-Gonzalez v. Moreno*, 919 F.3d 582, 590-91 (1st Cir. 2019). This analysis requires courts to consider the totality of the circumstances, including "(i) the consenter's age, education, past experiences, and intelligence; (ii) whether law enforcement officials advised the consenter of his constitutional right to refuse consent; (iii) the length and conditions of the consenter's detention and/or questioning; and (iv) law enforcement officials' use of any inherently coercive tactics." *United States v. Perez-Diaz*, 848 F.3d 33, 39 (1st Cir. 2017) (citation omitted).

The record shows that, when police officers arrived at the house of Defendant's mother, Defendant came out of the house to talk to Agent Nelson Murillo ("Agent Murillo"). Docket Nos.

64 at 29; 65 at 8. Agent Murillo identified himself and explained the situation. Docket No. 64 at 29. He then testified that the following exchange ensued:

> When I told him that he had to accompany us to the police station, he told us there was no problem. So I asked him if he was armed. He told me he was. I asked him, "where is your weapon?" He said, "It's in my bedroom. I'll come right back and I'll go fetch it." Immediately I told him, "No, I'll go with you. You tell me where the weapon is and I'll seek it." To which he answered me, "Okay, no problem." He made a gesture with his hand and said, "follow me."

*Id*. at 31.[1] The only evidence presented by Defendant to rebut this account is his own testimony at the suppression hearing.[2] When asked if he gave "any consent or permission, verbal or nonverbal, for Agent Murillo to enter [his] mother's home?," Defendant responded "No." Docket No. 65 at 31-32.

Other than stating in a conclusory fashion that he did not consent to the entry, Defendant presented no evidence disputing or undermining Agent Murillo's account of the conversation. Defendant may believe that he did not provide consent, but consent is a legal determination that must be made by the Court. Without an alternative version of facts, the Court credits Agent Murillo's testimony as to this conversation,[3] especially considering the Magistrate Judge's

---

[1] Agent Murillo's testimony at trial was consistent with his testimony at the suppression hearing. *See* Docket No. 182 at 20-21. This is significant because Agent Murillo testified at trial that he had not reviewed his prior testimony and that he was testifying from memory. *Id*. at 32. He then stated that he remembered that day "distinctly" "[b]ecause on that specific day, it was [his] wedding anniversary, and [he] had to leave that aside to deal specifically with this case." *Id*.

[2] No one else heard the conversation between Agent Murillo and Defendant.

[3] This credibility determination is further supported by the fact that Defendant was untruthful while testifying under oath during the suppression hearing. On cross-examination, the government asked Defendant whether he had always been a law-abiding citizen and Defendant responded that he had "always followed the law" and "never broken the law." Docket No. 65 at 32-33. The government then asked, "nevertheless on October 2015 you plead guilty to charges of domestic violence and animal abuse. Isn't that right?" *Id*. at 38. Defendant responded, "That's correct." *Id*. Defendant twice inaccurately asserted that he had never broken the law despite his 2015 conviction pursuant to a guilty plea. *Cf. United States v. Marrero-Rivera*, 124 F.3d 342, 349 (1st Cir. 1997) (noting that "statements at plea hearing carry a strong presumption

determination that "[a]fter having the opportunity to observe the demeanor of these witnesses and assess credibility, the court is not persuaded to discredit the testimony of PRPO Murillo and PRPO Santiago," Docket No. 59 at 6.

Moreover, the Court is "especially swayed by the fact that [Defendant] is an experienced police officer. An experienced police officer understands that when [law enforcement officers] turn up on his doorstep, he has no obligation to speak to them. He knows that he does not have to let them in." *United States v. Perez-Diaz*, 848 F.3d 33, 39-40 (1st Cir. 2017). Yet the evidence suggests that he chose to let Agent Murillo enter the house. There is no evidence that Defendant blocked Agent Murillo's entry, argued with Agent Murillo about whether he could enter the home, or in any way attempted to impede Agent Murillo's entry.[4] Furthermore, this interaction happened in surroundings familiar to Defendant—his mother's home—and the conversation only lasted "a few minutes." Docket No. 65 at 8; *see also Perez-Diaz*, 848 F.3d at 40 (holding that there was no clear error in finding that the defendant consented to the search in part because "[t]he entire interaction lasted only an estimated thirty to forty-five minutes, and took place in surroundings that were familiar to [the defendant]—his own home.").

Defendant does not argue that Agent Murillo procured his consent through "fraud, deceit, trickery or misrepresentation." *United States v. Vanvliet*, 542 F.3d 259, 264 (1st Cir. 2008). Rather, Defendant argues that the sheer number of police officers outside the house constituted a show of force that vitiated Defendant's ability to voluntarily and freely consent. Docket No. 65 at 65-66.

---

of verity" because "[i]t is the policy of the law to hold litigants to their assurances.") (quotation marks and citations omitted).

[4] Defendant's sister testified that she watched the conversation from afar, but merely stated that "[a]fter a few minutes they were talking outside, Gabriel, my brother came upstairs with Murillo following him behind." Docket No. 65 at 8.

Yet the record contains no evidence that there was anything in Defendant's "demeanor that would suggest that [his] ability to voluntarily consent was diminished." *United States v. Bey*, 825 F.3d 75, 80 (1st Cir. 2016) (citation omitted). Furthermore, "[d]uring the exchange at the front door, the officers' guns were not drawn and [Agent Murillo] did not attempt to apply any pressure beyond appearing ready and eager to enter. There was no overt act or threat of force against [Defendant], nor were there promises made to [him], nor are there any indication[s] of more subtle forms of coercion that might flaw [his] judgment." *Id.* at 81 (quotation marks and citations omitted).

The record simply does not support a finding that "the officers' behavior [was] so inherently coercive that [Defendant's] capacity for self-determination [was] critically impaired." *Id.* at 80 (quotation marks and citations omitted). "The 'tactics' the [] officers engaged in here—appearing at a doorstep and doing no more than informing a resident [of a complaint against him and requesting his service firearm]—do not approach the far more robust police activity that [the First Circuit has] previously deemed to fall short of being inherently coercive." *Id.* (citing *United States v. Jones*, 523 F.3d 31, 38 (1st Cir. 2008) (consent provided after "some ten to fifteen government agents, guns drawn, entered [the defendant's] hotel suite without knocking, handcuffed him, placed him in a separate room, and proceeded to interrogate him" not coerced); and *United States v. Barnett*, 989 F.2d 546, 555 (1st Cir. 1993) (consent provided after defendant "was met at the door of his home by seven or eight law enforcement officers, with guns drawn," was "arrested and handcuffed," and was "advised . . . of his Miranda rights" not coerced)).

For the aforementioned reasons, the Court finds that Defendant voluntarily consented to the entry.

Defendant also seemed to argue that there was no valid consent because Agent Murillo did not obtain consent from the homeowner—Defendant's mother—nor inquired as to the identity

of the homeowner. Docket Nos. 64 at 88; 65 at 6. The Court disagrees. A warrantless entry into a home does not violate the Fourth Amendment where "voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). Not only did Agent Murillo obtain consent from Defendant, the individual whose room was searched, but the evidence appears to show that Defendant had common authority over the house. "[C]ommon authority rests on mutual use of the property by persons generally having joint access or control for most purposes." *Id.* (quotation marks and citation omitted). Defendant's mother testified that Defendant "live[d]" with her in the house when he visited "every couple of weeks" and that he was "free to come in and out of the house." Docket No. 64 at 137, 148. Defendant's sister then testified that she lived with her parents and brothers, including Defendant, who "used to come down sometimes in the weekends." Docket No. 65 at 6; *see* Docket No. 19 at 4 (in his motion to suppress, Defendant stated he was "as an overnight guest at his mother's house."); *see also Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (finding that a defendant's status as an overnight guest in the upper unit of a duplex home was sufficient for him to claim a protected privacy interest in the premises, even though he was not given a key or left alone in the unit, and did not pay for his stay).

However, even if Defendant had no common authority over the house, the evidence shows that Agent Murillo reasonably believed that Defendant was a resident of that house. *See Rodriguez*, 497 U.S. at 186 (holding that a warrantless entry is not unconstitutional when the police reasonably believe that the person who consents to the entry is a resident of the premises.). Agent Murillo and Agent Roberto Santiago both testified that Defendant's sister told them that Defendant lived at that house. Docket No. 64 at 29, 106. This testimony has not been disputed.

...

Additionally, Agent Murillo testified that, before entering the house, Defendant told him that his service weapon was in *his* bedroom. Docket No. 64 at 31 ("I asked him, 'where is your weapon?' He said, 'It's in *my* bedroom.'"); *see Rodriguez*, 497 U.S. at 179 (noting that the person who consented repeatedly referred to the apartment as "our" apartment and stated that she had clothes and furniture there.). As such, it was reasonable for Agent Murillo to believe that Defendant was a resident of the house and could, thus, consent to his warrantless entry.

For the above stated reasons, the Court finds that consent to the entry was given.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of January, 2020.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
